UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**CLEAR SKIES NEVADA, LLC**                                                    **CIVIL ACTION**

**VERSUS**                                                                         **No. 16-1511**

**DOE—68.96.33.171**                                                              **SECTION I**

## ORDER AND REASONS

Before the Court is an *ex parte* motion[1] filed by plaintiff, Clear Skies Nevada, LLC ("Clear Skies"), for authorization to seek discovery prior to the discovery conference mandated by Rule 26(f) of the Federal Rules of Civil Procedure. Specifically, Clear Skies requests permission to issue a subpoena to an internet service provider ("ISP") to determine the identity of the defendant, Doe—68.96.33.171 ("Doe"), who potentially infringed on Clear Skies' copyright. Without a subpoena, Clear Skies claims that Doe's identity cannot be discovered and a discovery conference cannot take place. For the following reasons, the motion is granted.

## BACKGROUND

Clear Skies is the copyright holder of the motion picture "Good Kill."[2] It filed a complaint[3] in this Court seeking damages and injunctive relief for alleged copyright infringement pursuant to 17 U.S.C. § 101, *et seq.* In its complaint, Clear Skies alleges that the unnamed defendant, Doe—68.96.33.171, acquired, transferred, copied, and freely distributed its motion picture to others over the internet without authorization by using a network called "BitTorrent protocol."

Plaintiff explains that a BitTorrent protocol operates as follows:

> To copy and distribute copyrighted motion pictures over the Internet, many individuals use online media distribution systems or so-called peer-to-peer ("P2P") or BitTorrent

---

[1] R. Doc. No. 4. The motion was filed *ex parte* because defendant has yet to make an appearance.
[2] R. Doc. No. 1-2.
[3] R. Doc. No. 1.

networks.  P2P networks, at least in their most common form, are computer systems that enable Internet users to (1) make files (including motion pictures) stored on each user's computer available for copying by other users; (2) search for files stored on other users' computers; and (3) transfer exact copies of files from one computer to another via the Internet. . . .

[BitTorrent protocol makes] even small computers with low bandwidth capable of participating in large data transfers across a P2P network.  This is called "seeding."  Other users ("peers") on the network connect to the seeder to download.  As additional peers request the same file, each additional user becomes a part of the network (or "swarm") from which the file can be downloaded; however, unlike a traditional peer-to-peer network, each new file downloader is receiving a different piece of the data from each user who has already downloaded that piece of data, all of which pieces together comprise the whole.

This means that every "node" or peer user who has a copy of the infringing copyrighted material on a P2P network can also be a source of download for that infringing file, potentially both copying and distributing the copyrighted Motion Picture.  The distributed nature of P2P leads to rapid spreading of a file throughout peer users.  As more peers join the swarm, the likelihood of a successful download increases.  Because of the nature of a P2P protocol, any seed peer who has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a possible source for the subsequent peer.[4]

In order to identify those who allegedly infringe on their copyrights, copyright holders such as Clear Skies hire investigators.  In this case, Clear Skies hired Daniel Macek ("Macek"), a consultant retained by Maverickeye UG ("MEU").[5]  MEU is in the business of providing forensic investigation services to copyright owners.[6]  Macek helped Clear Skies identify Doe as an allegedly prolific participant in the BitTorrent distribution system who obtained and then distributed unauthorized copies of "Good Kill."[7]

Clear Skies represents to the Court that through Macek's investigation, it was able to obtain the unique Internet Protocol ("IP") address assigned to Doe by his or her ISP, which was IP address 68.96.33.171.[8]  "The name of the Internet user behind [that IP address, however,] is not public

---

[4] R. Doc. No. 4-2, at 1-3.
[5] R. Doc. No. 4-2, at 1.
[6] R. Doc. No. 4-2, at 1.
[7] R. Doc. No. 4-1, at 4-5.
[8] R. Doc. No. 4-1, at 7.

2

information . . . ."[9] While Clear Skies has been able to use public databases such as "WhoIs.com" and "WhatIsMyIPAddress.com" to determine that IP address 68.96.33.171 is assigned to a subscriber within the Eastern District of Louisiana, "Clear Skies is unable to identify Doe and is only able to identify the ISP used by Doe"—which is Cox Communications, Inc ("Cox").[10]

Macek represents in his affidavit that accompanies the motion that "[i]n logs kept in the ordinary course of business, ISPs keep track of the IP addresses assigned to their subscribers. Once provided with an IP address, plus the date and time of the detected and documented infringing activity[—information that Macek has obtained for Doe through MEU's investigatory software], ISPs can use their subscriber logs to identify the name, address, email address, phone number and other related information of the user/subscriber."[11] Of course, as Clear Skies acknowledges, the subscriber of an IP address is not necessarily Doe himself/herself. He or she could instead be someone in the subscriber's household, a visitor to the subscriber's home, or even someone in the vicinity of the home that gains access to the subscriber's network.

Based on the volume of BitTorrent activity and content associated with IP address 68.96.33.171, however, Clear Skies argues that "anyone actively using or observing activity on the IP address would likely be aware of the [allegedly infringing] conduct" and that Doe is probably "not a young child."[12] Indeed, Clear Skies maintains that the monitored level of activity is indicative of "permissive access," and Doe is therefore likely to be "the primary subscriber of the IP address or someone who resides with the subscriber."[13]

Because Clear Skies has allegedly exhausted all of the investigative techniques available to it, it requests permission to issue a subpoena to Cox to identify the subscriber of IP address 68.96.33.171.

---

[9] R. Doc. No. 4-1, at 7.
[10] R. Doc. Nos. 4-1, at 8, 4-2, at 5.
[11] R. Doc. No. 4-2, at 4.
[12] R. Doc. No. 4-1, at 14.
[13] R. Doc. No. 4-1, at 14.

3

**LAW AND ANALYSIS**

I.   **Standard of Law**

In a recent similar case, *BKGTH Prods., LLC v. Does 1-20*, No. 13-5310, 2013 WL 5507297 (E.D. La. Sept. 30, 2013), U.S. Magistrate Judge Karen Roby described the standard of law governing Clear Skies' request as follows:

> [Rule 26(d)(1) of the Federal Rules of Civil Procedure] provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except . . . when authorized . . . by court order." *St. Louis Group, Inc., v. Metals and Additives Corp., Inc., et al.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011). Although the Rules do not provide a standard for the court to use in exercising its authority to order expedited discovery, it is generally accepted that courts use one of the following two standards to determine whether a party is entitled to conduct such discovery: (1) the preliminary-injunction-style analysis set out in *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982); or (2) the "good cause" standard, which has been used interchangeably with the "reasonableness" standard. *See St. Louis Group*, 275 F.R.D. at 239.
>
> The Fifth Circuit has yet to adopt a standard, however, several district courts within the Fifth Circuit have expressly utilized the "good cause" standard when addressing this issue. *St. Louis*, at 275 F.R.D. at 239–40; (quoting 8A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, Federal Practice and Procedure § 2046.1 (3d ed. 2010)) ("Without any binding authority to the contrary, and in light of the fact that a majority of courts have adopted the 'good cause' standard, this Court believes that a showing of good cause should be made to justify an order authorizing discovery prior to the Rule 26(f) conference").
>
> The good cause analysis determines whether "good cause" exists to allow for expedited discovery. The good cause analysis considers factors such as the "breadth of the discovery requests, the purpose for requesting expedited discovery, the burden on the defendants to comply with the requests and how far in advance of the typical discovery process the request was made." *St. Louis Group*, 275 F.R.D. at 240, n. 4; (citing *Sunflower Elec. Power Corp. v. Sebelius*, 2009 WL 77430, at *2 (D. Kan. Mar. 20, 2009)); (quoting *In re Fannie Mae Derivative Litigation*, 227 F.R.D. 142, 143 (D.D.C.2005)).
>
> "In a 'good cause' analysis, a court must examine the discovery request 'on the entirety of the record to date and the reasonableness of the request in light of all the surrounding circumstances'." *St. Louis*, at 239–40; *Ayyash*, 233 F.R.D. at 327 (quoting *Merrill Lynch*, 194 F.R.D. at 624) (emphasis in original). Although the factors used by Courts may vary, good cause typically exists where "the need for expedited discovery outweighs the prejudice to the responding party." *St. Louis*, at

4

239–40; (quoting *Energy Prod. Corp. v. Northfield Ins. Co.*, 2010 WL 3184232, at * 3 (E.D. La. Aug.6, 2010)); *see e.g., West Coast Productions, Inc., v. Does 1–169*, 2013 WL 3793969, at *1 (D. N.J. July 19, 2013); (quoting *Am. Legalnet, Inc. v. Davis*, 673 F.Supp.2d 1063, 1066 (C.D. Cal. 2009); (accord *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 275–76 (N.D. Cal. 2002). The burden of showing good cause is on "the party seeking the expedited discovery." See *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003). A party seeking expedited discovery must narrowly tailor their requests in scope to the necessary information they seek. *St. Louis*, at 240; *Semitool*, 208 F.R.D. at 277 (discovery requests held to be narrowly tailored where Defendants' representative is not subjected to a free-ranging deposition); *Dimension Data*, 226 F.R.D. at 532 (E.D. N.C.2005) (considering that the discovery request was not narrowly tailored in denying plaintiffs' motion for expedited discovery); *see also Monsanto Co. v. Woods*, 250 F.R.D. 411, 413 (E.D. Mo. 2008) (citing *Irish Lesbian & Gay Org. v. Giuliani*, 918 F. Supp. 728, 730–31 (S.D. N.Y.1996)) ("[C]ourts generally deny motions for expedited discovery when the movant's discovery requests are overly broad.").

However, Courts in the Fifth Circuit have stated that "irrespective of the standard applied, '[e]xpedited discovery is not the norm'." *St. Louis*, at 204; quoting *Merrill Lynch*, at 623. In limited circumstances though, district courts have allowed expedited discovery "when there is some showing of irreparable harm that can be addressed by limited, expedited discovery." *Id*. at 204–205. *See e.g., JP Morgan Chase Bank, N.A. v. Reijtenbagh*, 615 F.Supp.2d 278, 282–83 (S.D. N.Y.2009) (granting expedited discovery to plaintiffs to determine the location of missing art pledged as collateral for $50 million promissory note); *Ayyash*, 233 F.R.D. at 326–27 (allowing expedited discovery on third-parties to locate assets in the United States relating to foreign defendants who had the incentive to hide those assets); *Pod–Ners, LLC v. N. Feed & Bean of Lucerne Ltd. Liab. Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002) (allowing limited discovery in infringement action where bean plant variety at issue is a commodity subject to sale and consumption and might not be available for inspection at a later date); *McMann v. Doe*, 460 F.Supp.2d 259, 265–66 (D. Mass. 2006) (allowing expedited discovery on basis that showing of irreparable harm had been made because plaintiff could receive no remedy without knowing defendant John Doe's true name).

Courts also look to whether evidence would be lost or destroyed with time and whether the proposed discovery is narrowly tailored. *Killer Joe Nevada, LLC v. Does 1–31*, 2013 WL 3270384, at *1 (S.D. Ohio June 26, 2013); quoting *Best v. Mobile Streams, Inc.*, 2012 WL 5996222, *1 (S.D. Ohio November 30, 2012), citing *Arista Records, LLC v. Does 1–9*, 2008 WL 2982265 (S.D. Ohio July 29, 2008); *see also Arista Records*, LLC v. Does 1–15, 2007 WL 5254326 (S.D. Ohio May 17, 2007).

*Id.* at *4-6.

**II.     Analysis**

Although Clear Skies directs the Court's attention to the fact that courts across the country routinely grant expedited discovery requests in copyright and/or patent infringement cases, "good cause" must still be demonstrated.  *BKGTH Prods., LLC*, 2013 WL 5507297 at *6.  In *BKGTH Prods., LLC*, the court concluded that good cause had not been shown where (1) there were discrepancies in the plaintiff's representations to the Court, (2) the plaintiff did not make use of any public databases such as "WhoIs.com" and "http://www.ip2location.com/demo" to attempt to identify the defendants, (3) such public database searches would have revealed the names and email addresses associated with several of the IP addresses plaintiff sought to discover and would have shown that several of the IP address holders were located outside of this district, and (4) at least one of the IP addresses the plaintiff sought to discover was associated with the University of New Orleans, which would have made it extremely difficult to identify the user of the IP address at a particular date and time.  *Id.* at *6-7.

Unlike the plaintiff in *BKGTH Prods., LLC*, however, Clear Skies has demonstrated good cause for permitting this limited discovery on an expedited basis.  Through the use of an investigator and the public research databases, Clear Skies has obtained all of the information available to the public regarding the identity of IP address 68.96.33.171.  Unlike the plaintiff in *BKGTH Prods., LLC*, plaintiff here requests only one subpoena to identify a single subscriber, and it is clear that the subscriber is located within this district.[14]  Furthermore, given the allegedly high level of BitTorrent activity associated with IP address 68.96.33.171, the Court is persuaded that although it is possible that "the infringer might be someone other than the subscriber," that is not

---

[14] R. Doc. No. 4-6, at 1.

the most likely scenario.  Clear Skies has identified the missing party with sufficient specificity to permit further discovery.

In similar copyright infringement cases, courts have held that "it is reasonable to use an IP address as a starting point to obtain identifying information about a Doe Defendant who, through digital forensic means, has been tied to the torrent swarm in issue." *W. Coast Prods., Inc. v. Does 1-351*, No. 4:12-CV-00504, 2012 WL 2577551, at *4 (S.D. Tex. July 3, 2012); *see also Cobbler Nevada, LLC v. Does 1-21*, No. 15-CV-02065-WYD-MEH, 2015 WL 6811505, at *2 (D. Colo. Nov. 6, 2015).  Accordingly, the Court finds that the "breadth of the discovery request[ed]" by Clear Skies is narrow, the "purpose for requesting expedited discovery" is pressing and legitimate, the "burden on [Cox] to comply with the request[]" and the burden on Doe himself/herself is minimal,[15] and that the request was not made unduly "far in advance of the typical discovery process."  *See St. Louis Group*, 275 F.R.D. at 240, n. 4.  Because only a single subpoena is requested, "the potential to ensnare numerous innocent internet users into litigation" is not present under the facts of this case.  *See VPR Internationale v. Does 1–1017*, No. 11–2068, 2011 WL 8179128 (C.D. Ill. Apr.29, 2011); *Pac. Century Int'l Ltd. v. Does*, 2011 WL 5117424 (N.D. Cal. Oct.27, 2011).  In contrast, the harm that Clear Skies would suffer were this Court to deny its request would be irreparable, as Clear Skies has run out of options for identifying Doe.

---

[15] Plaintiff represents that ISPs such as Cox retain this information as a matter of course.  Furthermore, as to the burden on Doe, courts addressing this issue have found that "internet subscribers do not have an expectation of privacy in the identifying information they conveyed to their ISPs."  *See, e.g., Cobbler Nevada, LLC*, 2015 WL 6811505 at *2.

**CONCLUSION**

Because Clear Skies has demonstrated "good cause" for its expedited discovery request, the Court concludes that it should be permitted to issue a Rule 45 subpoena to Cox requesting the subscriber information for IP address 68.96.33.171 at the date and time identified by Clear Skies. Of course, the Court is confident that Clear Skies will assess whether the pursuit of claims against the subscriber is warranted once the individual associated with the IP address has been identified. Accordingly,

**IT IS ORDERED** that plaintiff's motion is **GRANTED**.

New Orleans, Louisiana, March 18, 2016.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**